# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RYAN D. DEJOHN, individually and on behalf of all similarly situated employees**,**

    Plaintiff,

  v.

PITT OHIO EXPRESS, LLC**.**, and doe defendants 1 – 10**,**

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 3:13-CV-01417-UN2

JUDGE MALACHY E. MANNION

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## Table of Contents

I. Procedural History ...................................................................................1

II. Statement of Facts...................................................................................1

III. Questions for Review ............................................................................5

IV. Argument...............................................................................................5

    A.      Standard of Review ......................................................................5

    B.      Plaintiff is Not Entitled to Overtime Pursuant to State and
            Federal Law...............................................................................7

         1.  *Plaintiff is an Exempt Employee in Accordance with the Motor
             Carrier Act Exemption to the Fair Labor Standards Act.* ......7

         2.  *Plaintiff is an Exempt Employee in Accordance with the
             Pennsylvania Motor Carrier Exception (PMCE).*...................12

         3.  *Plaintiff in an Exempt Employee and Therefore Cannot
             Maintain A Cause of Action Under the FLSA* .......................13

    C.      Plaintiff's Claims That He Was Not Properly Compensated for
            Missed Meal Breaks Must Fail...............................................14

V. Conclusion.............................................................................................15

# Table of Authorities

Page(s)

CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .........................................................................................6

*Atlantic Indep. Union v. Sunoco, Inc.*,
  No. Civ. A. 03-4389, 2004 WL 1368808 (E.D. Pa. June 16, 2004) ......................13

*Blankenship v. Thurston Motor Lines, Inc.*,
  415 F.2d 1193 (4th Cir. 1969) .........................................................................11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .........................................................................................6

*Cerutti v. Frito Lay, Inc.*,
  777 F.Supp. 920 (2011) ...............................................................................12, 13

*Cover v. Feesers*,
  No. 1:10-cv-282, 2011 U.S. Dist. Lexis 57603 (M.D. Pa. April 18, 2011) .........10

*Ellis v. Common Wealth Worldwide Chauffeured Transp. of NYC, LLC*,
  No. 10-cv-1741, 2012 WL 1004848 (E.D.N.Y March 23, 2012) ..........................14

*Friedrich v. U.S. Computer Servs.*,
  974 F.2d 409 (3d. Cir. 1992) ............................................................................3

*Lawrence v. Nat'l Westminster Bank N.J.*,
  98 F.3d 61 (3d Cir. 1996) .................................................................................6

*Levinson v. Spector Motor Servs.*,
  330 U.S. 649 (1947) .........................................................................................8

*Oakes v. Commw. of Pa.*,
  871 F.Supp. 797 (1995) ...................................................................................15

*Reich v. Homier Distrib. Co., Inc.*,
  362 F. Supp. 2d 1009 (2005) ...........................................................................8

*Robertson v. Allied Signal, Inc.*,
  914 F.2d 360 (3d Cir. 1990) ........................................................................................6

*Vaughn v. Watkins Motor Lines, Inc.*,
  291 F. 3d 900 (6th Cir. 2002) ....................................................................................10

*Zeglen v. Miller*,
  No. 3:04-CV-1940, 2008 WL 696940 (M.D. Pa. March 12, 2008) .........................6

### STATUTES

43 P.S. § 260.1, *et seq.* ..................................................................................................1

43 P.S. §§ 333, *et seq.* ...............................................................................................1, 12

29 U.S.C. § 207(a) .........................................................................................................7

29 U.S.C. § 213(b)(1) .....................................................................................................7

49 U.S.C. § 31502 .........................................................................................................12

### OTHER AUTHORITIES

29 C.F.R. § 782.5(a) .......................................................................................................8

29 C.F.R. § 785.19(a) ....................................................................................................15

34 Pa. Code § 231.41 ....................................................................................................12

AND NOW COMES Defendant, PITT OHIO EXPRESS, LLC ("Pitt Ohio" or "Defendant"), by and through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, and respectfully submits this MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT with respect to the claims filed by Ryan DeJohn ("Plaintiff" or "DeJohn"), as follows:

## I.   Procedural History

Plaintiff, Ryan DeJohn, initiated this action on May 24, 2013, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*., the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§333.101, *et seq*., and the Pennsylvania Wage Payment and Collection Law, 43 P.S. §260.1, *et seq*.

## II.   Statement of Facts

Pitt Ohio is a transportation solutions provider specializing in trucking services including supply chain, ground, less-than-truckload and truckload throughout the Mid-Atlantic and Midwest region or the United States.  (SOF ¶ 1). Pitt Ohio's vehicles are operated on highways and in interstate commerce. (SOF ¶ 2).  Pitt Ohio operates seven terminals in Pennsylvania, including a Terminal located in Hazelton, Pennsylvania.  (SOF ¶¶ 3, 4).  At its Hazelton Terminal, Pitt Ohio employs individuals it designates as dockworkers. (SOF ¶ 5).  Dockworkers

are responsible for loading and unloading Pitt Ohio trucks in a safe and effective manner. (SOF ¶¶ 6, 7).

Ryan DeJohn was hired in January 2012 as a part time Outbound dockworker. (SOF ¶ 8).   At the outset of his employment, DeJohn received approximately one week of dockworker training from a dock trainer. (SOF ¶ 10). During his training, DeJohn also received written materials, including:  Pitt Ohio's Safety Guide, Material Handling Guidelines, Policy on Drug and Alcohol Use for Non-Commercial Drivers, Hazardous Material Regulation Guidelines, and a copy of Pitt Ohio's Driver and Dockworker Handbook.   (SOF ¶¶11-12).   There are safety concerns with all aspects of loading trucks and during training, dockworkers are trained to safely load trucks. (SOF ¶¶ 13, 14).   As part of training, DeJohn learned various techniques for handling freight.   This included: blocking and bracing freight, building reels, and selecting appropriate tools to load freight (SOF ¶ 15).   DeJohn was trained to secure heavier freight to the left and taller freight to the right to keep the truck balanced and safe. (SOF ¶ 16).

In June 2012, DeJohn, began to work for Pitt Ohio as a full time Inbound dockworker. (SOF ¶ 17).   During the shift worked by DeJohn as an Inbound dockworker, there was one supervisor and approximately eight dockworkers (SOF ¶ 18).   DeJohn was required to think and act quickly while working on the dock. (SOF ¶ 18).

Inbound Planners devise the truck drivers' routes each night and create the "book" which designates which freight is to be loaded on which truck. (SOF ¶ 19). The Inbound Planner plans the "book" and sequences the load so that the driver's last stop is loaded first and the driver's first stop is loaded last. (SOF ¶ 21). The Inbound Planner does not sequence the load for safety purposes, but for efficiency for drivers. (SOF ¶ 22). The Inbound Planner also does not see the freight and may not know certain qualities of the freight, such as whether it is hazardous material, the dimensions of the freight, or how the freight needs to be blocked or braced. (SOF ¶ 20). The Inbound Planner does not map out or sketch how the truck should be loaded. (SOF ¶ 26).

Dockworkers do not always follow the book's sequence when loading freight. In fact, Pitt Ohio often receives complaints from drivers that their freight was loaded out of sequence (SOF ¶ 24). Rather, dockworkers are to ensure that the freight is loaded safely in a truck or trailer and Pitt Ohio expects Inbound dockworkers to use their own independent discretion when loading freight in the "book." (SOF ¶¶ 23, 25).

When performing his dockworker duties, DeJohn was not required to notify a supervisor if there was deviation from the sequence of the load or with regard to the placement of heavy items (SOF ¶ 27). DeJohn had discretion over which tools and equipment to use to load the truck. (SOF ¶ 29). It was also DeJohn's decision

how to place items on the truck (SOF ¶ 29).  Dockworkers use various methods to secure freight, including:  blocking and bracing, using straps, and dunnage. (SOF ¶ 30).  It was DeJohn's decision how to secure freight that needed to be secured (SOF ¶ 31).  DeJohn was not required to have a supervisor check his work when he secured drums (SOF ¶ 32) or before he blocked and braced freight (SOF ¶ 32).  DeJohn was also permitted to close and move trucks without a supervisor's approval or review of his work.  (SOF ¶ 33).

Unlike Inbound dockworkers, Outbound dockworkers do not follow a "book" or sequence loads.  (SOF ¶ 34).  Outbound dockworkers are responsible for loading trucks with freight that will be going to another Pitt Ohio terminal. (SOF ¶ 34).  Outbound dockworkers must load freight as quickly as possible, but safety is the top priority. (SOF ¶ 34).

Pitt Ohio utilizes an automatic 30 minute deduction from pay for employees who work more than six hours. (SOF ¶ 36). According to Pitt Ohio's Meal Break Policy, Pitt Ohio dockworkers are required to punch in and punch out for their 30 minute, uninterrupted meal break. (SOF ¶ 35 ).  Most of the time, DeJohn punched out and punched back in for his meal break (SOF ¶ 38).  When working as a fulltime dockworker, DeJohn would take a 30 minute meal break and generally received a full 30 minute meal break. (SOF ¶¶ 39-40).  DeJohn recalls only one time when he was asked to come back to work after he had already punched out for

a meal break, but he later received a 30 minute meal break.  (SOF ¶ 41).  Pitt Ohio

dockworkers must notify their supervisor or another member of management if

they do not get a 30 minute, uninterrupted meal break. (SOF ¶ 37).  DeJohn,

however, never complained to a supervisor or Human Resources that his meal

breaks were interrupted. (SOF ¶ 42).

## III.  <u>Questions for Review</u>

1.     Whether DeJohn was an exempt employee in accordance with

the federal Motor Carrier Act Exemption to the Fair Labor Standards Act

and the Pennsylvania Motor Carrier Exemption?

2.     Whether DeJohn was entitled to overtime payment in

accordance with the Fair Labor Standards Act and Pennsylvania Minimum

Wage Act?

3.     Whether DeJohn was compensated for all hours that he

worked?

## IV.  <u>Argument</u>

### A.     Standard of Review

Summary judgment is appropriate where the "materials in the record,

including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials" show "that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) & (c)(1)(A).  Under this standard, the Court must enter summary judgment against a plaintiff who fails to offer admissible evidence sufficient to establish the existence of every element of her claim on which she bears the burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 327 (1986).

Although a defendant bears the initial responsibility of asserting the basis for its motion for summary judgment, the defendant is not required to negate the plaintiff's claim.  Rather, the defendant must only point out that there is an absence of evidence to support the plaintiff's case or, alternatively, offer affirmative evidence demonstrating that the plaintiff cannot prove her case.  *Lawrence v. Nat'l Westminster Bank N.J*, 98 F.3d 61, 69 (3d Cir. 1996).  After the defendant has met its initial burden, the plaintiff must present concrete evidence designating "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  *See also* Fed. R. Civ. P. 56(e)(2).  A plaintiff cannot avoid summary judgment by presenting evidence that "is merely colorable, or is not significantly probative," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986), and it is well-established that a plaintiff's mere speculation, conclusory allegations, and bare denials are insufficient to raise a genuine issue of material fact.  *See*, *e.g.*, *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990); *Zeglen v.*

*Miller*, No. 3:04CV1940, 2008 WL 696940, at *6 (M.D. Pa. Mar. 12, 2008) (Munley, J.) ("an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment . . . . "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor, [citation omitted], and cannot simply reassert factually unsupported allegations contained in its pleadings."  (internal citations omitted) (alterations in original)).

### B.   Plaintiff is Not Entitled to Overtime Pursuant to State and Federal Law

1.   *Plaintiff is an Exempt Employee in Accordance with the Motor Carrier Act Exemption to the Fair Labor Standards Act.*

Pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), as amended, an employer must pay one and one-half times the regular rate of pay to covered employees who work longer than 40 hours in any workweek.  29 U.S.C. §207(a). The FLSA, however, contains exemptions from its overtime pay requirements, including the Motor Carrier Act exemption.  29 U.S.C. §213(b)(1).  The Motor Carrier Act exemption applies if the activities of a private motor carrier's employees affect the safety of operations of motor vehicles on public highways in interstate commerce.  Because the U.S. Department of Transportation has asserted power to regulate the activities of truck drivers as well as certain other employees whose activities affect vehicle safety, i.e., loaders, mechanics, and drivers' helpers,

all of those employees are exempt from the overtime payment provision of the

FLSA.  *Levinson v. Spector Motor Servs.*, 330 U.S. 649, 671 (1947).

Pursuant to the relevant Federal Regulations, the Motor Carrier Act

exemption applies to an employee:

> Whose duties include, among other things, the proper loading
> of his employer's motor vehicles so that they may be safely
> operated on the highways of the country.  A "loader" may be
> called by another name…and his duties will usually also
> include unloading and the transfer of freight between the
> vehicles and the warehouse, but he engages, as a "loader," in
> work directly affecting "safety of operation" so long as he has
> responsibility when such motor vehicles are being loaded, for
> exercising judgment and discretion in planning and building a
> balanced load or in placing, distributing, or securing the pieces
> of freight in such a manner that the safe operation of the
> vehicles on the highways in interstate or foreign commerce will
> not be jeopardized.

29 C.F.R. § 782.5(a).

Pitt Ohio's "loaders" are referred to as dockworkers.  However, this naming

convention is not controlling.    *See* 29 C.F.R §782.2(b)(2): "[N]either the name

given to his position nor given to the work that he does is controlling…what is

controlling is character of the activities involved in the performance of his job."

Whether the exemption applies to DeJohn here will primarily depend on whether

he spends a substantial part of his time exercising discretion to safely load [freight]

onto Defendant's trucks.  *Reich v. Homier Distrib. Co., Inc*., 362 F. Supp. 2d 1009,

1013 (2005).

The Motor Carrier Act exemption applies here because DeJohn consistently exercises his own judgment and discretion with respect to safely loading Pitt Ohio's trailers.  DeJohn admitted that there were safety concerns with all aspects of loading.  DeJohn testified that he chose which tools or equipment he used to safely load items on the truck and that it was his decision how to secure freight using one of the various methods for which he had been trained.  Further, a supervisor was not required to check DeJohn's work and DeJohn was permitted to close and move trucks without his supervisor's approval.

Though the Inbound Planner creates a "book" for Inbound dockworkers which devises the truck drivers' routes and details which freight needs to be loaded on which truck, DeJohn still exercised significant judgment and discretion when loading trucks.  The Inbound Planner sets forth a load sequence in the "book," but dockworkers are not required to follow the "book's" sequence when loading freight.  Rather, dockworkers are to ensure the freight is loaded safely in a truck and Pitt Ohio expects dockworkers to use their own independent discretion when loading freight in the "book."  The Inbound Planner sequences the load so that the driver's last stop is loaded first and his first stop is loaded last.  The Inbound Planner does not sequence the load for safety purposes, but rather for efficiency purposes for the convenience of the drivers.  The Inbound Planner, however, does not see the freight and may not know certain qualities of the freight, such as its

dimensions, whether the freight needs to be blocked or braced, or whether the freight is hazardous material.   The Inbound Planner also does not map out or sketch how the truck should be loaded.  DeJohn admits that he was not required to notify a supervisor if there is a deviation from the sequence of the load.

This instant matter is in opposite to the facts in this Court's decision in *Cover v. Feesers*, No. 1:10-cv-282, 2011 U.S. Dist. Lexis 57603 (M.D. Pa. April 18, 2011), wherein the Court adopted the Magistrate Judge's recommendation and denied Defendant's Motion for Summary Judgment because the record did not support the finding that plaintiffs were "plainly and unmistakably" engaged in activities that directly related to safety operations.   The Court further noted that there was several questions of fact that remained unresolved relating to, among other things, the amount of discretion that plaintiffs had with regard to loading freight onto skids and loading freight onto trailers using the Load Grid.  There, the Load Grid was a diagram that identified the exact location a skid was to be placed on the truck or trailer and plaintiffs had no discretion in modifying the Load Grid. Those facts do not exist here.  DeJohn testified that there is no map or sketch of how the truck should be loaded and he did not have to get supervisor approval if he deviated from the sequence set forth in the "book."

In *Vaughn v. Watkins Motor Lines, Inc*., 291 F. 3d 900 (6th Cir. 2002), the United States Court of Appeals for the Sixth Circuit affirmed summary judgment

for an employer and held that the appellant loaders exercised their own discretion and judgment with regard to the most appropriate way to load trailers, even though they would occasionally consult with their supervisors.  Similarly, in *Blankenship v. Thurston Motor Lines, Inc*., 415 F.2d 1193 (4th Cir. 1969), the loaders were closely supervised, told which trucks to load, and had their work checked.  The court noted, however, that these factors, "do not render inconsequential the initial discretion exercised by [the loaders]."  *Id*. at 1197.

As the testimony in this case establishes, the process of loading requires dockworkers to use substantial discretion and independent judgment.  DeJohn's testimony shows that he did not merely place freight into a truck while blindly following the "book" created by the Inbound Planner who had not seen the freight. Instead, he made decisions about where to load the freight, when to load the freight, and which type of tools he would use to load the freight, so that the trucks were loaded in the safest manner, using methods such as blocking and bracing. Because DeJohn exercised discretion and used his independent judgment to load freight in a safe manner, the duties DeJohn performed as a dockworker qualified him as a "loader" under the Motor Carrier Act exemption to the FLSA.

2.      *Plaintiff is an Exempt Employee in Accordance with the Pennsylvania Motor Carrier Exception (PMCE).*

The Pennsylvania Minimum Wage Act requires an employer to pay overtime to employees for hours worked over forty in a workweek.  34 Pa. Code §231.41.  This rule, however, is subject to various exceptions.  One such exception is the Pennsylvania Motor Carrier Exception ("PMCE").  The PMCA is modeled after the Federal Motor Carrier Exemption.  *Cerutti v. Frito Lay, Inc.*, 777 F.Supp. 920 (W.D. Pa. 2011).  As set forth in 43 Pa. Stat. Ann. § 333.105(b)(7):

> (b) Employment in the following classifications shall be exempt from both the minimum wage and overtime provisions of this act [the PMWA]
>
> …
>
>        (7) Any employe[e] of a motor carrier with respect to whom the Federal Secretary of Transportation has power to establish qualifications and maximum hours of service under 49 U.S.C. §3102(b)(1) and (2) (relating to requirements for qualifications, hours of service, safety and equipment standards).

*Cerrutti citing* 43 Pa. Stat. Ann. §333.105(b)(7).

In relevant part, 49 U.S.C. §31502[1] states:

>  (b) Motor carrier and private motor carrier requirements.  The Secretary of Transportation may prescribe requirements for—
> (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and

---

[1] This title has been renamed from §3102 to §31502.

> (2) qualifications and maximum hours of service of employees
> of, and standards of equipment of, a motor private carrier, when
> needed to promote safety of operation.

Pitt Ohio is a motor carrier in accordance with federal law. As set forth in *Cerutti*, "the plain language of the PMCE unambiguously indicates that any employee over whom the federal Secretary of Transportation has the power to establish qualifications and maximum hours or service is exempt from both the minimum wage and OT provisions of the PMWA." 777 F.Supp at 941. Thus, employees of a motor carrier (Pitt Ohio) are exempt from the overtime provisions of the PMWA.

3.  *Plaintiff is an Exempt Employee and Therefore Cannot Maintain A Cause of Action Under the FLSA*

If the Court finds that DeJohn is an exempt employee and not entitled to overtime compensation, his FLSA meal break claim must be dismissed with prejudice. As an exempt employee, he would have no recourse under the FLSA for a missed meal break.

Additionally, because DeJohn is an exempt employee, he is not entitled to overtime compensation under the FLSA in accordance with the Motor Carrier Act Exemption to the FLSA. Controlling case law states that "the burden is on the employer to prove the applicability of this exemption." *See Atlantic Indep. Union v. Sunoco, Inc.*, No. Civ. A. 03-4389, 2004 WL 1368808 (E.D. Pa. June 16, 2004) *citing Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 412 (3d. Cir. 1992). Pitt

Ohio has met that burden and evidence proves that Plaintiff was an exempt employee, who used his judgment and independent discretion in his role as a dockworker, and was not entitled to overtime pay.

### C.   Plaintiff's Claims That He Was Not Properly Compensated for Missed Meal Breaks Must Fail

Assuming for the sake of argument only, that there is a genuine dispute as to whether DeJohn was an exempt employee, there is no evidence that DeJohn did not take a single meal break for which he was not paid.  DeJohn testified that he generally received his full thirty minute meal break and his meal breaks were not interrupted.  DeJohn testified that he could only recall one time when he was asked to come back to work after he had punched out for his meal break, but that he later received a thirty minute meal break.   DeJohn claims that most of the time he punched out and back in for his break, and that while working as a fulltime dockworker, he would take his 30 minute break.  DeJohn also conceded that he never informed his supervisors that he had been unable to take a meal break.  An employer's failure to 'ensure' that its employees are not working during unpaid meal breaks does not make the use of an automatic meal deduction policy illegal.  Rather, it is the failure to compensate an employee who worked with the employer's knowledge through an unpaid meal break—whether the employee reported the additional time or not—that potentially violates the FLSA.  *Ellis v.*

*Common Wealth Worldwide Chauffeured Transp. of NYC, LLC*, No. 10-cv-1741, 2012 WL 1004848 (E.D.N.Y March 23, 2012).

The applicable federal regulation and relevant case law indicate a bona fide meal break does not require the employer to provide compensation to the employee for the period of that break. *See, e.g.,* 29 C.F.R. § 785.19(a) ("Bona fide meal periods are not worktime."); *Oakes v. Commw. of Pa.,* 871 F.Supp. 797, 799 (1995) (with respect to meal periods, "the test for whether compensation is required is whether the employee's time is spent predominantly for the employer's benefit or the employee's benefit").  DeJohn admits that he generally received his full 30 minute meal break and can only recall one time when his meal break was interrupted.  For these reasons, DeJohn's claims that he was not appropriately paid for all hours that he worked due to Pitt Ohio's automatic 30 minute meal break deduction must fail.

## V.   <u>Conclusion</u>

Defendant respectfully requests that this Honorable Court enter summary judgment in favor of Pitt Ohio and dismiss Ryan DeJohn's Complaint with prejudice.

**Dated:** October 22, 2014

  /s/  *James F. Glunt*  
James F. Glunt  
Samantha M. Clancy  
**Ogletree, Deakins, Nash, Smoak &**  
**Stewart, P.C.**  
One PPG Place, Suite 1900  
Pittsburgh, PA 15222  
412.394.3333  
412.232.1799 (fax)  
*Attorneys for Defendant,*  
*Pitt Ohio Express, LLC*

## LOCAL RULE 7.8(b) CERTIFICATION OF COMPLIANCE

I certify that Defendant's Memorandum of Law in Support of its Motion for Summary Judgment complies with Local Rule 7.8(b).

I further certify that, in preparation of the above document, I used the following word processing program and version:  Word 2010, Microsoft Office Version 2010, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the following word count.

I further certify that the above document contains 3,481 words.


/s/ *James F. Glunt*
Counsel for Defendant

## CERTIFICATE OF SERVICE

I do hereby certify that on October 22, 2014, the **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was filed using the CM/ECF System which will send notification of such filing to all appropriate CM/ECF participants.


_/s/ James F. Glunt_____