## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RYAN D. DEJOHN, individually and on behalf of all similarly situated employees,** | : | |
| | : | **CIVIL ACTION NO. 3:13-1417** |
| **Plaintiff** | : | |
| **v.** | : | **(JUDGE MANNION)** |
| **PITT OHIO EXPRESS, LLC., and DOE DEFENDANTS 1-10,** | : | |
| | : | |
| **Defendants.** | | |

# M E M O R A N D U M

Plaintiff Ryan D. DeJohn was a dockworker for defendant Pitt Ohio Express, LLC ("Pitt Ohio" or "defendant"), in its terminal located in Hazelton, Pennsylvania. He and his fellow dockworker employees were responsible for loading and unloading Pitt Ohio trucks in a safe and effective manner. He and his coworkers were required to punch in and punch out for their 30 minute, uninterrupted meal break. Plaintiff alleges that he and his coworkers were misclassified as dockworkers and considered exempt employees. As such, he claims that defendant's policy of not paying him overtime compensation for all hours in excess of 40 in a given workweek illegally denied him overtime pay and, that defendant's policy of automatically deducting 30 minutes from his time each day for a lunch break, regardless of whether he actually took a full 30 minute uninterrupted break, violated the law. Plaintiff has thus sued defendant under the Fair Labor Standards Act, ("FLSA"), the Pennsylvania

Minimum Wage Act, ("PMWA") and the Pennsylvania Wage Payment and Collection Law, ("WPCL") on behalf of himself and his coworkers.

Plaintiff filed a motion for class certification. Plaintiff seeks to certify two classes comprised of himself and all other dockworkers employed by Pitt Ohio in the Commonwealth of Pennsylvania. Defendant filed a motion for summary judgment seeking dismissal of plaintiff's complaint with prejudice. Defendant claims that plaintiff falls within the Motor Carrier Act ("MCA") exemption and thus is not entitled to either overtime pay or to pay for work during uncompensated meal breaks under the Fair Labor Standards Act.

## I.   BACKGROUND

Plaintiff was employed by defendant as a part-time dockworker at defendant's Hazelton, Pennsylvania, terminal (the "Hazelton Terminal") from January 3, 2012 through May 28, 2013, and as a full-time dockworker at the Hazelton Terminal from May 29, 2013 until he submitted his voluntary resignation on July 11, 2013. (*See* Doc. 5-1). The last day plaintiff worked for Pitt Ohio was July 12, 2013. Pitt Ohio paid plaintiff a straight-time hourly wage for all hours he worked as a dockworker, including time he worked over 40 hours per week. Pitt Ohio only paid dockworkers employed for three or more years one and a half times the regular wage for any hours worked over 40 hours per week.

Plaintiff's job, along with all the other dockworkers, was to load and

unload freight on and off trucks at Pitt Ohio's facilities. In loading a truck, dockworkers are required to follow the order in which the driver's deliveries are to be made, such that material is to be loaded in reverse order of a driver's scheduled delivery. Pitt Ohio trained dockworkers to independently load and unload trucks. Inbound dockworkers were expected to use their own discretion when loading freight on the trucks. Dockworkers were also trained how to handle freight, including the planning and building of a balanced load, as well as the placement, distribution and securement of the pieces of freight. Dockworkers had discretion to decide which tools and equipment to use in loading the trucks. Thus, dockworkers exercised discretion and independent judgment in the performance of their duties.

Plaintiff filed this action against defendant Pitt Ohio and Doe Defendants 1-10 on May 24, 2013, (Doc. 1), bringing claims for violations of the FLSA overtime provision, 29 U.S.C. §207(a)(1), and claims for violations of the PMWA, overtime provision, 43 P.S. §331.104(c). Additionally, the plaintiff claims the automatic 30 minute meal deduction policy of Pitt Ohio constituted a willful violation of the FLSA and the PMWA since he performed work during his meal time without compensation. Plaintiff also asserted claims under the WPCL, 43 P.S. §260.1, alleging that he did not receive all compensation due and owed to him based on Pitt Ohio's failure to pay him overtime. All of plaintiff's claims relate to both the alleged failure of Pitt Ohio to pay him overtime for the hours he worked in excess of 40 hours per week and for the

time he worked during his uncompensated meal breaks. The FLSA claim was brought as a collective action pursuant to 29 U.S.C. §216(b). The PMWA and WPCL claims were brought as a class action pursuant to Fed.R.Civ.P. 23. Plaintiff claims that he, and those similarly situated to him, were not paid all wages (including overtime and meal breaks) earned by them, in violation of the FLSA.

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 29 U.S.C. §216(b). Also, the court can exercise supplemental jurisdiction over plaintiff' state law claims under 28 U.S.C. §1367.

On October 22, 2014, plaintiff filed a motion for class certification, (Doc. 25), seeking to certify the following class, pursuant to Rule 23(b)(3):

> All persons employed in Pennsylvania as Dockworkers within the three years preceding the filing of this action who were not paid premium overtime compensation at a rate of 1.5 their regular rate for all hours worked in excess of forty in a workweek (the "Class").

Plaintiff's motion has been briefed and exhibits have been submitted. (Docs. 26, 33, 36).

In addition, on October 22, 2014, Pitt Ohio filed a motion for summary judgment, (Doc. 27), pursuant to Rule 56, maintaining that it is entitled to judgment as a matter of law on all of plaintiff's claims since plaintiff is an exempt employee in accordance with the MCA exemption to the FLSA and

4

the Pennsylvania Motor Carrier Exception, ("PMCA"). Pitt Ohio's motion has been briefed, (Docs. 28, 35, 39), and a statement of material fact, a response with a counterstatement of material facts, and a reply were filed. (Docs. 29, 34, 40). Also, exhibits have been submitted.

Both motions are ripe for disposition. Since the summary judgment motion presents a threshold issue as to whether plaintiff is an employee exempt from the FLSA's overtime requirements, this motion will be addressed first.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (holding a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

Moreover, the Third Circuit indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007) (citation omitted). A material factual dispute is one that may affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir.

2003); *see also* Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007); Watson v. Eastman Kodak Co., 235 F.3d 851, 858 (3d Cir. 2000) (stating the non-movant must establish the existence of each element on which it bears the burden of proof). A "genuine" disputed issue exists only "if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

## III.   MATERIAL FACTS[1]

The defendant, Pitt Ohio, is a transportation solutions provider specializing in trucking services including supply chain, ground, less-than-truckload, and truckload shipments throughout the Mid-Atlantic and Midwest region of the United States. Pitt Ohio's vehicles are operated on highways and in interstate commerce. Pitt Ohio operates seven terminals in Pennsylvania, including one located in Hazelton. At the Hazelton Terminal where plaintiff worked, Pitt Ohio employs individuals whom it designates as dockworkers. These dockworkers load and unload Pitt Ohio's trucks and are trained to do so in a specific safe and effective manner.

The plaintiff was hired in January 2012 as a part-time, Outbound dockworker. He was given a Realistic Job Preview document for the dockworker position. This showed that the plaintiff's starting wage was $13.84 per hour and that he would be paid straight time for all hours worked for his first three years of employment. When he was first employed, the plaintiff received about one week of training from a dock trainer. During his training, the plaintiff received Pitt Ohio's Safety Guide, Material Handling Guidelines, Policy on Drug and Alcohol Use for Non-Commercial Drivers, and Hazardous

---

[1]Unless otherwise noted, the facts are taken from the parties' statements of material facts, responses thereto, and the exhibits submitted. The court considers the facts and draws all reasonable inferences in the plaintiff's favor. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 266–67 (3d Cir. 2005).

8

Material Regulation Guidelines. The plaintiff was also given a copy of Pitt Ohio's Driver and Dockworker Handbook.

Further, the dockworkers are trained to safely load trucks. All new dockworkers go through training. Every facility has a dock trainer who has the responsibility of training the new dockworkers on the best practices employed by Pitt Ohio regarding the loading, unloading, and shipping of material. The purpose of the dockworker training program is to train the new dockworkers as to how things are done at Pitt Ohio so that the new dockworkers can independently load and unload trucks. However, new dockworkers do not work independently until after they have completed the dockworker training program. During the training program, a new dockworker loads and unloads trucks with his dock trainer to ensure that the new dockworker is trained properly. In addition, new dockworkers are oriented on material handling equipment, including both how and when to use equipment such as two-wheeled dollies and forklifts. Also, all of the handling equipment used at the Hazleton facility was listed on the activities checklist.

As part of plaintiff's training, he learned various techniques for handling freight, including blocking and bracing freight, blocking and moving reels, and selecting appropriate tools to load freight. In addition, the plaintiff was trained to secure heavier freight to the left and taller freight to the right to keep the truck balanced and safe because of the slant in the road for water runoff. Otherwise, if all of the heavy freight is on the right and the truck made a sharp

left turn, the truck could tip over.

The plaintiff began working for Pitt Ohio as a full-time, Inbound dockworker in June 2012. During his shifts, there was one supervisor and approximately eight dockworkers. The dock is a fast-paced environment wherein decisions often need to be made very quickly. The job responsibility of the Inbound Planner is to plan the daily delivery schedule for the drivers and to ensure that the drivers can meet their scheduled delivery time. At Pitt Ohio, the Inbound Planner is also known as the "router" and he devises the truck drivers' routes each night and creates the "book" to designate which freight is to be loaded on which truck. The dockworkers then load the truck with the designated freight in the best way they see fit, keeping in mind their training, guide books, and safety. The Inbound Planner does not see the freight and may not know certain qualities of the freight, including whether it is hazardous material, the dimensions of the freight, or how the freight needs to be blocked or braced. In addition, the Inbound Planner sequences the load so that the driver's last stop is loaded first and the driver's first stop is loaded last, but the Inbound Planner does not sequence the load for safety purposes. Rather, the load is planned for driver efficiency. Further, the Inbound Planner does not map out or sketch how the truck should be loaded.

The dockworkers decide how to load and where to place the freight in the truck based on what they perceive to be the safest and most efficient way. Moreover, Pitt Ohio expects Inbound dockworkers to use their own judgment

10

when loading the freight in the "book," keeping in mind their training, guidebooks, and safety. However, Pitt Ohio often receives complaints from drivers that their freight was loaded out of sequence. The plaintiff was not required to notify a supervisor if there was deviation from the sequence of the load or with regard to the placement of heavy items, but Inbound dockworkers were to notify a supervisor if freight would not fit on a truck.

Additionally, the plaintiff was able to use his own judgment in deciding which tools and equipment to use to load the truck and how to place the items on the truck. Dockworkers use various methods to secure freight, including blocking and bracing, straps, and dunnage. The plaintiff decided how to secure the freight in order to prevent it from moving during transit. Further, a supervisor did not always check the plaintiff's work when he secured drums or before he blocked and braced freight. The plaintiff was also allowed to close and move trucks without a supervisor's approval or review of his work.

Outbound dockworkers do not follow a "book" or sequence loads. Outbound dockworkers are responsible for loading trucks with freight that would be going to another one of Pitt Ohio's terminals. Further, these dockworkers must load freight as quickly as possible but in a safe manner.

According to Pitt Ohio's Meal Break Policy, the dockworkers are required to punch in and punch out for their 30 minute meal break. Moreover, Pitt Ohio uses an automatic 30 minute deduction from pay for dockworkers who work more than six hours per day. The plaintiff stated that he got his full

meal breaks most of the time and estimated missing his meal breaks possibly twice a month. Moreover, the plaintiff recalls only one time when he was asked to come back to work after he had already punched out for a meal break, but he later received a 30 minute meal break. Further, the plaintiff punched out and punched back in for his meal breaks most of the time. In addition, even though the dockworkers must notify their supervisor or another member of management if they do not get a full 30 minute meal break, the plaintiff does not recall ever complaining to a supervisor or Human Resources that his meal breaks were interrupted.

The plaintiff submitted a counterstatement of material facts, (Doc. 34, at 9-14), to which Pitt Ohio responded, (Doc. 40), and denied that these facts are material. "Material facts" are those which might affect the outcome of the suit. Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004). The following are the new facts the plaintiff has submitted which are material and which have not been covered by Pitt Ohio.

Each day before noon, the terminal manager goes in and looks at the Kronos system for the prior day's shifts to see if the dockworkers clocked in and clocked out for lunch if they worked for more than six hours for that day. Pitt Ohio is aware of dockworkers complaining that they had to work through a meal break. Although plaintiff's automatic deduction for meal breaks was capable of being cancelled, Pitt Ohio's records show that the plaintiff's automatic deduction was never cancelled during his employment from 2012

through 2013. According to plaintiff's daily time records that were maintained by Pitt Ohio, there were several instances in which the plaintiff clocked out less than 30 minutes for his meal breaks during 2013.

The guidebooks, operational guidelines, and other documents, including the trainer's checklist of materials are the best practices to be followed according to Pitt Ohio and must be followed by the dockworkers. One of the guidebooks that Pitt Ohio provides to all dockworkers is the "Material Handling" guidebook. Dockworkers cannot deviate from Pitt Ohio's guidelines, including the Material Handling Guidelines. Moreover, any discretion the dockworkers have in loading the trucks is all within the context of: (a) safety first; (b) conforming to the guidebooks and operations procedures established by Pitt Ohio; and (c) conforming to the training they received by Pitt Ohio. Brad Caven of Pitt Ohio stated that he was not aware of any document, memo, e-mail, or statement from any supervisor or anyone in a position of authority that confers full discretion on the dockworkers as to how they fulfill their day to day responsibilities. Pitt Ohio's expectation is summarized in the guidebook where it states, "As a freight handling specialist, you should perform your job using the methods and procedures described in this manual." The purpose of this guidebook is to instruct dockworkers how to properly handle freight, how to use the equipment, how to load freight safely, how to sequence the freight properly, and the proper procedures for blocking and bracing to prevent the freight from moving in transit. Further, the

guidebook even identifies which equipment is to be used in moving specific freight.

The plaintiff was required to notify his supervisor when loading poisonous materials, but he did not recall whether there was any hazmat material that he could load without informing a supervisor.

## IV.   DISCUSSION

### *A. Doe Defendants 1-10*

Initially, Doe Defendants 1-10 shall be dismissed for lack of service under Fed.R.Civ.P. 4(m). As mentioned, plaintiff filed his complaint on May 24, 2013. To date, plaintiff has failed to identify his Doe Defendants 1-10 and these unnamed defendants have not yet been served with plaintiff's complaint. Also, it does not appear that plaintiff has conducted any discovery to ascertain the names of his ten Doe Defendants as required.

Further, plaintiff only briefly refers to Doe Defendants 1 through 10 in his complaint. Specifically, plaintiff alleges that "[he] is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff." Plaintiff also alleges that "at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendants." (Doc. 1, at 3, ¶9). Also, plaintiff failed to state the direct personal involvement of these unnamed Doe

14

Defendants with respect to any of his claims under the FLSA and under state law. In any event, it is now over two years since plaintiff filed his complaint and no service has been made on Doe Defendants 1 through 10. Only defendant Pitt Ohio has been served and responded to plaintiff's complaint. (Doc. 5).

In *Blakeslee v. Clinton County*, 336 Fed.Appx. 248, 250 (3d Cir. 2009), the Third Circuit stated:

> Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified. *See Klingler v. Yamaha Motor Corp., U.S.A.,* 738 F.Supp. 898, 910 (E.D.Pa. 1990). If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed. *See Scheetz v. Morning Call, Inc.,* 130 F.R.D. 34, 37 (E.D.Pa. 1990) ("Fictitious parties must eventually be dismissed ... if discovery yields no identities.").

Plaintiff had in excess of two years to conduct discovery to identify his Doe Defendants. However, plaintiff failed to do so. In *Blakeslee*, the District Court for the Middle District of PA dismissed the Doe Defendants under Rule 21. The Third Circuit held that the District Court did not abuse its discretion in dismissing the Doe Defendants under Rule 21.

Therefore, the court finds that Doe Defendants 1 through 10 should be dismissed from the instant action under Rule 21 as well as Rule 4(m) and Rule 12(b)(5) due to plaintiff's failure to identify these unnamed defendants and serve them with his complaint. These defendants have not been personally served and there is no indication that any of these unnamed

individuals are aware of the claims that plaintiff has raised against them. The

120-day period permitted by Rule 4(m) has expired in this action with respect

to Doe Defendants 1 through 10.

The Court in *Mathies v. Silver*, 450 Fed.Appx. 219, 221-22 (3d Cir.

2011) stated:

> A plaintiff to a civil action in federal court must complete service
> of his complaint within 120 days of filing or within a period
> prescribed by the District Court. *See* Fed.R.Civ.P. 4(m). If the
> plaintiff fails to complete service within the specified time, Rule
> 4(m) requires the District Court to determine whether the plaintiff
> has shown good cause for the failure. *See Boley v. Kaymark,* 123
> F.3d 756, 758 (3d Cir. 1997). If so, the District Court must grant
> an extension to effect service; if not, the District Court may either
> dismiss the complaint or grant a discretionary extension. *See id.*

Dismissal orders under Rule 4(m) are frequently issued when a court is

confronted by a party who fails to timely file and serve pleadings. *See* Tillio v.

Mendelsohn, 265 Fed.Appx. 509 (3d Cir. 2007). Additionally, "where there is

an unjustified and unexcused failure to timely serve a Complaint the court

'must dismiss the action.'" *Id.*

Rule 4(m) of the Federal Rules of Civil Procedure provides, in part, that,

"if the plaintiff shows good cause for the failure [to serve a defendant within

120 days after the complaint is filed], the court must extend the time for

service for an appropriate period." Fed.R.Civ.P. 4(m). Good cause can be

shown by reasonableness of plaintiff's effort to serve defendants, the

prejudice defendant suffers by the lack of timely service, whether plaintiff filed

a motion for an extension of time to effectuate service, and whether the statute of limitations will bar the plaintiff's claims if the case is dismissed. *See* [Mathies v. Silver, 450 Fed.Appx. at 222](#) (citation omitted). Good cause is equated to "excusable neglect ..., which requires a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *Id*. (citation omitted).

Plaintiff has needlessly caused the delay of this case proceeding forward as to the unnamed defendants and these defendants have been prejudiced by the lack of service upon them. Indeed, the witnesses and the recollections of these Doe Defendants will undoubtedly have faded due to plaintiff's failure to serve them in a timely manner. Also, plaintiff has not moved for an enlargement of time to serve Doe Defendants 1 through 10, nor does it appear from the record before the court that plaintiff has even attempted to conduct discovery to find out the identities of Doe Defendants 1 through 10.

Further, plaintiff has not shown good cause for his failure to identify and serve his Doe Defendants 1 through 10. Thus, dismissal of Doe Defendants 1 through 10 is appropriate. *See* [Beckerman v. Susquehanna Twp. Police, 254 Fed. Appx. 149, 154 (3d Cir. 2007)](#). As such, Doe Defendants 1-10 shall be dismissed under Rules 21 and 4(m). The dismissal of Doe Defendants 1-10 shall be with prejudice since, as discussed below, Pitt Ohio is entitled to

17

summary judgment with respect to all of plaintiff's claims for overtime and regarding meal breaks. Thus, it would be futile to dismiss the Doe Defendants without prejudice.

### B. MCA Exemption to FLSA's Overtime Requirements

The inquiry as to whether plaintiff falls under the MCA exemption removing him from the FLSA's overtime protections focuses on what the class of employees (here, dockworkers) could have reasonably been expected to do and whether the handling of freight at Pitt Ohio's terminal before or after loading were activities that affected "the safety of operation of motor vehicles" in interstate commerce. Pitt Ohio has the burden of proof regarding the pending issue.

"In 1938, Congress enacted the FLSA to protect covered workers from substandard wages and oppressive working hours." Friedrich v. U.S. Computer Servs., 974 F.2d 409, 412 (3d Cir. 1992) (citing Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). The Fair Labor Standards Act provides that:

> "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

18

29 U.S.C. §207(a)(1). Employers who violate the provisions of the FLSA are "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. §216(b). "When Congress enacted the [FLSA] in 1938, it gave employees and their 'representatives' the right to bring actions to recover unpaid compensation due pursuant to the Act." Lopez v. Tri-State Drywall, Inc., 861 F.Supp.2d 533, 536 (E.D.Pa. 2012) (citation omitted). Thus, "[t]he FLSA permits employees to maintain a collective action under 29 U.S.C. §216(b) on their own behalf and on behalf of all similarly situated employees." Andrako v. U.S. Steel Corp., 788 F.Supp.2d 372, 377 (W.D.Pa. 2011). Further, a plaintiff must state a cognizable claim of his own in order to bring a collective action on behalf of his co-workers under the FLSA. *Id.* (citations omitted).

Therefore, employers covered by the FLSA must pay overtime compensation to employees who work for more than 40 hours a week "unless one or another of certain exemptions applies." Packard v. Pittsburgh Transp. Cp., 418 F.3d 246, 250 (3d Cir. 2005). Under the FLSA's regulations, bona fide meal periods are excluded from compensable work time if the employee is completely relieved from duty to eat meals. 29 C.F.R. §785.19. However, the FLSA's regulation make clear that if an employee works through an unpaid meal break, the time is compensable. 29 C.F.R. §785.11. FLSA exemptions are construed narrowly against the employer. Packard, 418 F.3d

at 251 (*citing* Madison v. Res. for Human Dev., Inc., 233 F.3d 175, 183 (3d Cir. 2000)). Whether defendants fall within an exemption to the FLSA is an affirmative defense, and "the employer has the burden of establishing an exemption." Buckley v. Kinder, 2013 WL 941562, at *1 (D.N.J. Mar. 6, 2013) (citing Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010)). Moreover, employers must prove "plainly and unmistakably" that its employees are exempt. Packard, 418 F.3d at 250. Additionally, the PMWA, like the FLSA, provides that employees shall receive overtime wages of "not less than one and a half times" their regular wage for any hours worked after 40 in a work week. 43 P.S. §333.104(c). "Pennsylvania courts have looked to federal law regarding the [FLSA] for guidance in applying the PMWA." Baum v. Astrazeneca LP, 372 F.App'x 246, 248 n. 4 (3d Cir. 2010) (citation omitted).

"The exemption of an employee from the hours provisions of the Fair Labor Standards Act under section 13(b)(1) depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. §782.2. The Motor Carrier Act ("MCA") contains an exemption with respect to the maximum hours and overtime provisions of the FLSA. 29 U.S.C. §213(b)(1). "The MCA 'vest[s] in the [DOT] power to establish reasonable requirements with respect to qualifications and maximum hours of service of employees and safety of operation and equipment of common and contract carriers by motor vehicle.'" Resch v. Krapf's Coaches, Inc., 785 F.3d 869, 872 (3d Cir. 2015) (citing Levinson v.

Spector Motor Serv., 330 U.S. 649, 658, 67 S.Ct. 931, 91 L.Ed. 1158 (1947)).

The motor carrier exception relied on by Pitt Ohio states that "[t]he provisions of section 207 of this title shall not apply with respect to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. §213(b)(1). "That grant of authority applies to transportation described in §13501 of Title 49." Veney v. John W. Clarke, Inc., 28 F.Supp.3d 435, 441 (D.Md. 2014) (citing 49 U.S.C. §31502(a)(1)). "In turn, §13501 in relevant part defines the scope of the Secretary's jurisdiction as being 'over transportation by motor carrier ... to the extent that passengers, property, or both, are transported by motor carrier between a place in a State and a place in another State ... and ... on a public highway.'" *Id.* "[T]he Supreme Court stated that the Motor Carrier Act exemption is triggered by the mere existence of the Secretary of Transportation's power to regulate, not the actual exercise of that power." Mayan v. Rydbom Exp., Inc., 2009 WL 3152136, \*3 (E.D.Pa. Sept. 30, 2009) (citing Levinson v. Spector Motor Serv., 330 U.S. 649, 678, 67 S.Ct. 931, 91 L.Ed. 1158 (1947)). Further, the PMWA contains a motor carrier exemption nearly identical to that in the FLSA. *Id.* at \*9 (citing 43 P.S. §333.105(b)(7)). As such, the principles under the FLSA and the MCA are identical to those that govern plaintiff's PMWA claims. *See* Resch, 785 F.3d at 871 n. 4.

The Motor Carrier Exemption applies if the employer is a carrier subject

21

to the DOT's jurisdiction and if the employee is a member of a class of employees that "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [Motor Carrier Act]." *See* Resch, 785 F.3d at 872; 29 C.F.R. §782.2(a). "Thus, the effect of the interplay between the FLSA and the MCA as applicable to this case is to exempt from the FLSA's mandatory overtime coverage employees of motor private carriers transporting property in interstate commerce on public highways when the activities of the employees affect safety of operation." Veney v. John W. Clarke, Inc., 28 F.Supp.3d at 441 (citation omitted).

According to the Motor Carrier Act, 29 C.F.R. §782.5(a), an exemption applies to an employee:

> Whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country. A "loader" may be called by another name, such as a "dockman," "stacker," or "helper," and his duties will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a "loader," in work directly affecting "safety of operation" so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balance load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized (citations omitted).

Accordingly, Pitt Ohio carries the burden of proving "plainly and unmistakably" that the dockworkers at its terminals, who are responsible for safely loading and unloading its trucks, are exempt under the MCA from the FLSA's overtime provision. Resch, 785 F.3d at 872 (citing Packard, 418 F.3d at 250). Moreover, "[w]hether employees' 'particular activities excluded them from the overtime benefits of the FLSA is a question of law.'" *Id.* at 872 n. 6 (quoting Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986)).

This court addressed a similar issue in a different case wherein a defendant shipment and distribution company was sued by its employees for overtime compensation. Cover v. Feesers, Inc., No. 1:10-cv-282, 2011 U.S. Dist. LEXIS 57603, 3 (M.D. Pa. April 18, 2011). In determining the scope of the MCA exemption, the *Feesers* court stated, "[t]he fundamental test is simply that the employee's activities affect the safety of operation." *Id.* at 23 (citing Levinson v. Spector Motor Service, 330 U.S. 649, 71 (1947)). In the *Feesers* case, the defendant's transportation department would prepare a Load Grid, which identified the exact location and placement of a skid in the truck or trailer, to ensure the trucks and trailers were balanced. *Id*. at 5. In addition, the Load Grid instructed employees on which side of the truck to place the skid as well as whether it should be placed in the front or back. *Id*. Further, the plaintiffs could make suggestions to better balance a truck or trailer, but a supervisor had to authorize any modification. *Id*. Accordingly, the

23

court in *Feesers* held that it was the supervisors who had discretion, not the plaintiffs who were loading the truck, which "casts significant doubt as to the applicability of the MCA exemption." *Id*. at 27.

The instant case differs from *Feesers* in several important ways. First, the "book" created by Pitt Ohio's Inbound Planner merely designates which freight is to be loaded on which truck. The dockworkers then load the truck with the designated freight in the best way they see fit, keeping in mind their training, guide books, and safety. The Inbound Planner does not see the freight and may not know certain qualities of the freight, including whether it is hazardous material, the dimensions of the freight, or how the freight needs to be blocked or braced. Accordingly, the Inbound Planner does not map out or sketch how the truck should be loaded as the Load Grid in *Feesers* did.

Second, the plaintiff was not required to notify a supervisor if there was deviation from the sequence of the load or with regard to the placement of heavy items, as was a key factor in the *Feesers* decision. Pitt Ohio's Inbound dockworkers were to notify a supervisor only if freight would not fit on a truck or when loading poisonous materials. Further, a supervisor did not always check the plaintiff's work when he secured drums or before he blocked and braced freight. Therefore, unlike *Feesers*, it is Pitt Ohio's dockworkers who are loading the trucks that have discretion, not their supervisor. Accordingly, the facts here do not cast doubt as to the applicability of the MCA exemption, but rather illustrate why the exemption does apply.

24

Further, the fact that Pitt Ohio's dockworkers were instructed to load the freight as prescribed by their training and guidebooks does not mean that they lacked the ability to exercise discretion in performing their job. Moreover, many courts have held that it does not follow that the employees do not use discretion merely because an employee is required to follow detailed manuals. *See* Amendola v. Bristol-Myers Squibb Co., 558 F.Supp.2d 459 (S.D.N.Y. 2008) (citing Roe-Midgett v. CC Servs., Inc., 512 F.3d 865 (7th Cir. 2008) ("independent judgment is not foreclosed by the fact that an employee's work is performed in accordance with strict guidelines"). Additionally, Pitt Ohio pointed out a telling argument in citing its own training document which listed steps that Inbound dockworkers are to take when loading a delivery unit. (Doc. 26-2). One of the listed steps states, "Be creative and load progressively with the shipments in the middle of the route." (Id.).

As further support for the application of the Motor Carrier Act exemption in this case, Karen Welton, an investigator with the Department of Labor ("DOL"), Wage and Hour Division, conducted an investigation in October of 2014 to determine whether the MCA exemption to the FLSA applied to Pitt Ohio's dockworkers at its West Middlesex, PA, terminal. (Doc. 39-2). In investigating the wage and hour practices of Pitt Ohio with the primary purpose of testing the MCA exemption as it applied to Pitt Ohio, Welton concluded in December 2014, that based on the totality of her findings, Pitt Ohio's dockworkers use discretion and their own judgment in deciding how

and where to place freight in the trucks. Specifically, according to the uncontested affidavit of Brian McGuire, Vice President of Human Resources for Pitt Ohio, Welton found as follows:

> that during each workweek, Pitt Ohio dockworkers work in whole or in part loading freight onto trailers, and their work directly affects the safety of operation of motor vehicles weighing 10,000 pounds or more in interstate commerce; that the primary duty of Pitt Ohio's dockworkers is to load freight onto trailers, and that this sometimes involves transporting hazardous materials, which requires placarding; that Pitt Ohio's dockworkers use their independent judgment and discretion to determine where and how to place freight in trailers; that the placement of freight by a Pitt Ohio dockworker is not simply determined by the order or sequence of the load, rather, dockworkers must take into consideration the height, weight, and size of the freight and decide how to block and/or brace it to allow for safe operation of the vehicle; that although some dockworkers are responsible for stripping freight off vehicles, all dockworkers unloading freight also are responsible for loading freight; and that although certain dockworkers, at times, receive some direction from other employees, they do not need to wait for direction or approval to load freight.

(Doc. 39-2, at 3).

The above findings by Welton are essentially the same facts detailed above that are supported by the record in the present case with respect to Pitt Ohio's dockworkers at its Hazleton terminal. This evidence lends immense credibility to Pitt Ohio's argument that the plaintiff and his fellow dockworkers had discretion and thus the MCA exemption applies. Therefore, the court finds that the evidence shows that the plaintiff exercised discretion to safely

load freight onto the trucks. Further, it is undisputed that Pitt Ohio is a motor carrier. Accordingly, the court finds that there is no genuine issue of material fact to be decided by a finder of fact regarding plaintiff's overtime claims and his claims regarding Pitt Ohio's automatic 30 minute meal deduction policy. As such, Pitt Ohio is entitled to summary judgment on these claims under both the FLSA and PMWA.

### C. Plaintiff's WPCL Claim

Plaintiff also asserted a claim for overtime under the WPCL. As the court in Ahmed v. Highway Freight Systems, Inc., 2014 WL 6473375, *3 (E.D.Pa. Nov. 19, 2014), stated:

> The WPCL "does not create a right to compensation ... [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned." DeAsencio v. Tyson Foods, Inc., 342 F.3d 301, 209 (3d Cir. 2003).

Plaintiff has not alleged that Pitt Ohio had a contractual obligation to pay him overtime and he was exempt from receiving overtime under the FLSA. Thus, Pitt Ohio is entitled to summary judgment with respect to plaintiff's overtime claim under the WPCL. *Id.*; *see also* DeAsensio, 342 F.3d at 309 ("The []WPCL provides a statutory remedy when an employer beaches a contractual obligation to pay earned wages. The contract between the parties

27

governs in determining whether specific wages are earned."); Drummond v. Herr Foods, Inc., 2014 WL 80729, *3 (E.D.Pa. Jan. 9, 2014) (holding that a plaintiff must "establish a contractual obligation to compensation to state a WPCL claim.").

Accordingly, Pitt Ohio's motion for summary judgment, (Doc. 27), will be granted with respect to all of plaintiff's claims.

### D. Plaintiff's Motion for Class Certification

Since all applicable criteria of the Motor Carrier Act exemption are met in this case regarding the overtime exemption for Pitt Ohio dockworkers, plaintiff's motion for class certification will be denied. As mentioned, under the FLSA, employees are permitted to maintain a collective action on their own behalf and on behalf of all similarly situated employees. Lopez v. Tri-State Drywall, Inc., 861 F.Supp.2d 533, 536 (E.D.Pa. 2012). However, a plaintiff must state a cognizable claim of his own in order to bring a collective action on behalf of his co-workers under the FLSA. *Id*. Because plaintiff has failed to establish a recognizable claim under the FLSA, he cannot bring a collective action on behalf of other dockworkers employed by Pitt Ohio. Thus, plaintiff's motion for class certification, (Doc. 25), will be denied.

## V.    CONCLUSION

Doe Defendants 1 to 10 will be dismissed with prejudice. Pitt Ohio's motion for summary judgment, (Doc. 27), will be granted with respect to all of the claims of plaintiff for overtime as well as the claims regarding meal breaks. The plaintiff's motion for class certification, (Doc. 25), will be denied since plaintiff does not have a cognizable claim under the FLSA. An appropriate order will be issued.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 14, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-1417-01.wpd